UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADMIRAL INSURANCE CO., | |
| Plaintiff, | CIVIL ACTION NO. 23-CV-01910 |
| v. | (SAPORITO, J.) |
| E&R ROOFING & CONSTR. CO., LTD., | |
| Defendant. | |

MEMORANDUM

This matter is before the Court on the motion for summary judgment filed by the plaintiff, Admiral Insurance Company ("Admiral"). (Doc. 23). Admiral maintains that it has no duty to defend and/or indemnify the defendant, E&R Roofing & Construction Co., LTD ("E&R"), in connection with a lawsuit in the Monroe County Court of Common Pleas.[1] (Doc. 1). The parties have briefed the motion (Doc. 23; Doc. 26;

---

[1] The lawsuit, *Kalahari Resorts, LLC v. Kramer Brothers, LLC et al.,* Case No. 003976-CV-2022, is pending in the Monroe Court of Common Pleas and relates to allegedly defective construction work performed at a waterpark, resort and hotel owned by Kalahari in Pocono Manor, Monroe County. E&R is a defendant in that lawsuit. On October 18, 2024, Admiral filed a motion to stay further discovery until after the resolution of that underlying action. (Doc. 24). We granted that motion on October 21, 2024, noting that the stay did not affect Admiral's pending motion for summary judgment. (Doc. 25).

Doc. 27; Doc. 28; Doc. 29) and it is now ripe for review. For the reasons set forth herein, we will deny the motion for summary judgment.

I.   Background

Due to the nature of Admiral's motion for summary judgment, Admiral's "Statement of Undisputed Material Facts" incorporates, and relies on, many of the allegations alleged in the underlying action in the Monroe County Court of Common Pleas. *See* (Doc. 23-7). Therefore, while the facts are taken from both Admiral's Statement of Undisputed Material Facts" (Doc. 23-3) and E&R's answer to those facts (Doc. 28), Kalahari's operative second complaint (Doc. 23-7) is referenced throughout this section.

Kalahari Resorts, LLC ("Kalahari"), the plaintiff in the underlying action, owns a waterpark and a hotel in Pocono Manor, Pennsylvania. Kalahari consists of a resort, convention center, and water park in Monroe County, Pennsylvania. It was built in two phases. Phase I began in 2013 and involved the construction of a waterpark, convention center, hotel core, and hotel wing. Phase II began in 2015, and it involved the construction of an addition to the waterpark and an additional hotel wing. Architectural Design Consultants, Inc. ("ADCI") served as the

architect for both phases, while Kraemer Brothers, LLC ("Kraemer") provided general contracting services. Kraemer hired Grimm Construction, Inc. ("Grimm") to construct the roof of the waterpark, and Grimm engaged E&R as its subcontractor to perform some of the roofing work. There is no written subcontract agreement between Grimm and E&R.

In 2020, Kalahari discovered that some of the metal coping, a protective covering for the roof, had "lifted and bent out," eventually disconnecting from the roof and blowing off. After this discovery, Kalahari launched an investigation into the roofing deficiencies and identified four general categories of deficiencies that it claims led to "damage[] [to] other aspects of the system and the facility, thereby damaging the work done by a variety of subcontractors." These deficiencies include coping deficiencies, vapor barrier deficiencies, insulation gaps, and deficient reinforced universal securement strip installations.

Kalahari alleges that the coping deficiencies resulted from the use of "shop-fabricated, not manufactured" materials that "actively malfunctioned" and were "deficient and defective." Kalahari further alleges that the vapor barrier deficiencies in the roof were caused either

by a manufacturer's defect in the materials and/or damage that occurred during the handling or installation of the materials by Kramer, Grimm, and/or E&R. Regarding the insulation gaps, Kalahari contends that the gaps are evidence of "poor workmanship by Kraemer, Grimm and/or E&R" and the failure to install the insulation correctly has damaged the roof system and facility. Finally, Kalahari alleges that Kramer, Grimm, and/or E&R failed to correctly install the reinforced universal securement strip "causing room membrane delamination, inflated membrane, and potential blowoffs." Relevant to this action, Kalahari has brought forth negligence claims against all defendants, including E&R, for the defective work included in all its noted roofing deficiencies.

In March of 2022, E&R, through its agent Northeast Insurance & Financial Consultants, provided Admiral with a notice of the alleged roofing defects, and provided Admiral with a copy of the complaint after it was filed in July of 2022. E&R has an insurance policy with Admiral that states, in pertinent part, the following:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property

damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damaged is caused by an "occurrence" that takes place in the "coverage territory";

(Doc. 23-17, at 10). On November 16, 2023, Admiral initiated this action seeking a declaration that it has no duty to defend and/or indemnify E&R in connection with the lawsuit initiated by Kalahari on the basis that Kalahari's allegations against E&R are not covered "occurrences" under its policy, and therefore, lie outside the scope of coverage. (Doc. 1). On October 11, 2024, Admiral moved for summary judgment on its claim for declaratory judgment. (Doc. 23).

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a

reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 595, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III. Discussion

At the heart of the underlying action is whether Admiral has a duty to defend E&R in Kalahari's action against E&R. The Third Circuit has summarized the substantive law applicable in this scenario as follows:

> An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to

indemnify." Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide a defense. Under Pennsylvania law, … a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in this case.

As the Pennsylvania Supreme Court has explained, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." Importantly, Pennsylvania adheres to the "four corners" rule (also known as the "eight corners" rule), under which an insurer's potential duty to defend is "determined solely by the allegations of the complaint in the [underlying] action." Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence.

To determine whether based on its factual allegations an underlying complaint triggers an insurer's duty to defend, a court views the allegations as true and "liberally construe[s them] in favor of the insured." An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense. *Thus, an insurer has a duty to defend if there is any possibility that its*

> *coverage has been triggered by allegations in the underlying complaint.*

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–74 (3d Cir. 2016) (citations and footnotes omitted, emphasis and brackets in original). Therefore, our consideration of Admiral's motion for summary judgment requires two steps. First, we must look at the allegations in Kalahari's complaint to determine the extent that Admiral owes E&R a duty to defend. Second, as Admiral owes E&R a duty to defend until it "becomes absolutely clear" that it does not owe E&R a defense any longer, we must determine whether the record supports Admiral's assertion that it no longer owes E&R a defense.

Turning towards the specific policy between E&R and Admiral, we find that courts have consistently held in situations with similar policy language that claims based upon faulty workmanship "simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." *Berkley Specialty Ins. Co. v. Masterforce Constr. Corp.*, 515 F. Supp. 3d 285, 293 (M.D. Pa. 2021), aff'd, No. 21-1287, 2023 WL 3378003 (3d Cir. May 11, 2023) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 489 Pa. 317, 335, 908 A.2d 888, 899 (2006)). "Thus, in instances

where property damages result 'from poor workmanship,' such damage is not covered by the relevant insurance policy, and the insurer has 'no duty to defend or indemnify' the insured." *Id.* (quoting *Kvaerner*, 908 A.2d at 900). However, courts have found an exception to this rule when allegations involve the "active malfunction" of materials or products used in the construction of homes. *Indalex Inc. v. National Union Fire Ins. Co.*, 83 A.3d 418 (Pa. Super. Ct. 2013); *Nautilus Ins. Co. v. 200 Christian St. Partners LLC*, 819 F. App'x 87, 89 (3d Cir. 2020). In other words, as the Third Circuit has noted, "[t]here is a distinction between a claim of faulty workmanship, for which an insurer does not have a duty to defend, and a claim of an 'active malfunction' of a product, for which an insurer does have such a duty, since an active malfunction is sufficiently fortuitous as to constitute an 'occurrence.'" *Nautilus*, 819 F. App'x at 89. In this action, whether Admiral has a duty to defend relies upon whether Kalahari's claims concern an active malfunction of a product or claims for faulty workmanship.

When looking towards Kalahari's complaint to determine the extent in which Admiral owes E&R a defense, Kalahari only alleges claims of faulty workmanship against E&R. Kalahari alleges that E&R's, and

other contractors', faulty work concerning vapor barriers, insulation gaps, and the installation of the reinforced universal securement strip caused significant deficiencies that subsequently led to roofing and water damage. *See generally* (Doc. 23-7). Therefore, Kalahari's allegations against E&R appear to concern matters that are outside the scope of Admiral's coverage. However, Kalahari additionally maintains that one of those deficiencies, the vapor barrier deficiencies, could have stemmed from a manufacturer defect in the used materials, rather than faulty workmanship. (Doc. 23-7, ¶ 55) ("This delamination is caused by a manufacturer defect … *and/or* damage that occurred during handling or installation by Kraemer, Grimm and/or E&R"); (Doc. 23-7, ¶ 64d) ("[V]apor barrier that exhibits numerous defects that permit the penetration of water into the interior layers of the roofing system…"). Put differently, Kalahari alleges a deficiency that stemmed from an "active malfunction," in which case Admiral would have a duty to defend. It is therefore unclear, based solely on Kalahari's allegations, whether the "faulty workmanship" of the subcontractors or an "active malfunction" of materials caused the vapor barrier deficiencies, and thus, whether Admiral has a duty to defend. Nonetheless, as the Third Circuit has

- 11 -

noted, "an insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint." *Ramara*, 814 F.3d at 674. Here, Kalahari's allegation of an "active malfunction" of materials concerning the vapor barrier deficiencies triggers an occurrence that falls within the scope of Admiral's coverage. Consequently, Admiral owes E&R a duty to defend until it becomes "absolutely clear that there is no longer a possibility" that it owes E&R a defense, i.e., it becomes clear that the deficiencies and damages from the vapor barriers stem from "faulty workmanship" and not an "active malfunction." *Id.*

In light of this analysis, as Admiral has moved for summary judgment, Admiral must show that there is no genuine dispute of material fact that the deficiencies and damages stemmed from "faulty workmanship" to satisfy its obligation to defend E&R. We find that Admiral has failed to do so. As we noted above, Kalahari's complaint alleges that the vapor barrier deficiencies in the roof may have stemmed from an active malfunction of the supplies manufactured by Carlisle Roofing Systems. (Doc. 23-2, ¶ 3); *see also* (Doc. 23-7, ¶ 108). E&R has subsequently denied that the damage to the vapor barrier deficiencies

were a result of faulty workmanship (Doc. 28, ¶ 8), and at this stage, the record indicates that there remains a question of material fact about whether the vapor barrier issues were caused by a manufacturer defect or faulty workmanship. For this reason, we find that the current state of the record precludes us from granting Admiral's motion for summary judgment.

### IV.   Conclusion

For the foregoing reasons, we will deny Admiral's motion for summary judgment. We note that our decision rendered in this memorandum does not affect the stay order dated October 21, 2024 (Doc. 24), which shall remain in full force and effect pursuant to the terms of that order.

An appropriate order follows.


Dated: June 13, 2025         *s/Joseph F. Saporito, Jr.*
                             JOSEPH F. SAPORITO, JR.
                             United States District Judge